OPINION OF THE COURT
Leo F. Hayes, J.
This motion presents one question: who owned a particular truck on October 5, 1980, the day its driver was killed and plaintiffs were injured in a traffic accident? Either the truck belonged to the driver, Gary Scerbo, doing business as Chet’s Auto Glass, or it still belonged to the dealership, Palmer’s Granite Garage, Inc. (hereinafter Palmer’s) that had ordered the truck from General- Motors on behalf of Mr. Scerbo.
Plaintiffs seek a declaration that title remained with defendant Palmer’s. The facts are these: Scerbo ordered the vehicle in question through Palmer’s. Palmer’s placed the order and ultimately took delivery of the truck from the manufacturer. Scerbo picked up the vehicle on October 3, 1980. On that date neither the factory invoice nor the manufacturer’s statement of origin had yet been received. Therefore, it was not possible to complete the registration process nor compute the exact price on the day Scerbo took delivery. However, attaching his own set of dealers plates, Scerbo was able to pick up the truck and drive it away. On *1004 the day following, October 4, 1980, the invoice was received and arrangements were made for Scerbo to make payment on October 6, 1980. Scerbo continued to possess and operate the truck. The fatal mishap occurred on October 5, 1980.
Following the accident, the dealership, Palmer’s, submitted the manufacturer’s statement of origin to Motors Insurance Company and received payment for the then demolished truck.
Plaintiffs feel that the fact that Palmer’s received the insurance money, the fact that on the day of the accident the purchase price had not yet been paid, and the fact that the official transfer of title documents had not yet been delivered mandate a finding that Palmer’s was still the owner as a matter of law.
The legal memoranda before the court focus on the interpretation of Ronconi Data Servs. v Travelers Ind. Co. (67 AD2d 703, affd 48 NY2d 736). Before addressing Ronconi (supra), the court thinks it is the first order of business to examine the statutory provision which governs this issue. Subdivisions (1) and (2) of section 2-401 of the Uniform Commercial Code provide:
“(1) Title goods cannot pass under a contract for sale prior to their identification to the contract (Section 2-501), and unless otherwise explicitly agreed the buyer acquires by their identification a special property as limited by this Act. Any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest. Subject to these provisions and to the provisions of the Article on Secured Transactions (Article 9), title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties.
“(2) Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place”.
*1005 There is no allegation that the parties explicitly agreed on a time when title would pass. Therefore, according to the terms of the statute title passed from the seller, Palmer’s, to the buyer, Scerbo, when the truck was delivered even though the document of title was to have been delivered at a future time. Indeed, according to the statute (Uniform Commercial Code, § 2-401, subd [1]) any reservation of title by Palmer’s was limited to a security interest once the truck was delivered. The Official Comment following section 2-401 (par 4) of the Uniform Commercial Code states that the test which determines when title has passed is based on “when the seller has finally committed himself in regard to specific goods.” According to that test and the clear language of the statute the seller had not only committed himself, but had completed his performance in regard to the physical delivery of the truck. Therefore, this court is of the opinion that ownership of the vehicle had passed on October 3, 1980, the day it was picked up by Scerbo.
The fact that the purchase price had not yet been paid does not alter the result. The statute does not include payment as a factor bearing on passage of title. The court is aware of cases where there was an explicit agreement that delivery and payment would be concurrent, and that in such cases of conditional sales, title would not pass until the payment was made. However, as already noted, there was no explicit agreement in this case. In these circumstances, the fact that the document of title had not yet been delivered is of no moment.
The fact that Palmer’s received insurance money on the truck does not alter the result mandated by the statute. Inasmuch as Palmer’s had not as yet been paid for the truck, it would seem only fitting that the insurance money be paid directly to it as compensation for the value of its outstanding interest. Contrary to the view of plaintiffs, this receipt of the insurance proceeds by Palmer’s works no inequity since Palmer’s was in reality only recouping the value of its outstanding interest. Neither would this circumstance serve as'the basis for an estoppel since no one changed his position in detrimental reliance upon the fact of Palmer’s claim to the insurance proceeds.
*1006 Finally, Ronconi Data Servs. v Travelers Ind. Co. (67 AD2d 703, affd 48 NY2d 736, supra) does not mandate a different result. In that case it was held that title had not passed from seller to buyer as of the date of an accident. The Appellate Division found it dispositive that approximately one month after the accident the parties negotiated a deal and consummated a formal transfer of ownership (the Court of Appeals adopted the Appellate Division’s reasoning). In other words, it was apparent that the parties themselves did not consider that title had passed as of the day of the accident; otherwise, they would not have negotiated for the sale of the same vehicle at a later time. The fact pattern in the Ronconi (supra) case differs from the present situation since here there is no evidence of any type of agreement concerning the passage of title, nor any evidence of an intention that title not pass until the happening of some future event.